and sentenced to 87 months in prison, which was two years above the advisory guideline range. I'd like to focus first this afternoon, if I may, on the District Court's decision to vary upward by two years from the guideline range. That decision was infected by error at the time it was made in open court by its substantive surprise to Mr. Mooningham, the prejudicial nature of which was both confirmed and compounded by the District Court's later written memorandum. The surprise first came in the form of the District Court's decision at sentencing for the first time to ask the parties to discuss whether he should vary upward. There was nothing in the PSR to suggest to Mr. Mooningham that the court might consider an upward departure or upward variance. The government had not asked for an upward variance. And at the time that the court suggested an upward variance, it engaged in a dialogue with counsel for Mr. Mooningham that was not a garden variety dialogue about someone having a significant number of criminal history points. Just on the point you mentioned a moment ago, did the court have an obligation to warn you in advance? So it didn't have to tell you in advance, I'm thinking about an upward departure and be ready to talk about that. No, Mr. Mooningham did not have a right to notice that the court was considering an upward variance. That is correct. However, Mr. Mooningham had a right when the court said at sentencing it was considering an upward variance to meaningfully respond to the District Court's stated concerns. And as the discussion ensued, those stated concerns became relevant to a particularly sophisticated relationship between the Sentencing Commission's criminal history rules, its decision to remove burglary from the definition of crime of violence, and also larger questions about whether burglars are more likely to recidivate once they're released. So once that happened, if he wanted to continue in that direction, should the judge have granted a continuance sua sponte or would he have been obliged to grant one if one had been asked? The counsel for Mr. Mooningham, in fact, did ask for time to research the questions that the court was asking, especially as it got further and the court mentioned a study that she hadn't read. It was asking questions about what the Commission's reasons were for deleting burglary from the definition, and it was apparent from her valiant efforts to respond to those concerns that the court might have been mistaken about the Commission's reasons for deleting burglary from the crime of violence. She asked twice for an opportunity to have a continuance in research and come back with the answers to these questions. So is that where error was committed and we should reverse as of that point or remand as of that point? Well, actually, the case law does not say that at that point necessarily the court should reverse and remand. However, in the circumstances of this case, because the court actually went on to rely on its mistaken understanding of the Commission's decision, then we understand, and this is shown further by the ensuing proceedings, that the counsel was in fact prejudiced by the district court's refusal to allow her to go out and do some more research and come back with information. Your opposing counsel argues that you were able to do that by motion after the fact and that that takes care of any prejudice. Is that correct? That is not correct, no. The answer to that question is that, yes, the counsel for Mr. Mooningham filed a motion to reconsider in which she presented the precise research that she was trying to think of during the sentencing hearing in which she demonstrated to the court that it might have been mistaken about some of its understandings about burglars and recidivism and the purpose of the criminal history rules, all of the things that came up at the sentencing hearing. At that point, yes, she did attempt to address those concerns, but in its response to those concerns, the district court in fact confirmed that it had been mistaken at the sentencing hearing and then compounded that error by going on to say, well, I wasn't really relying simply on this general idea of recidivism and burglars, so I'm setting that aside for a moment. I was relying only on his recidivism. Not just his recidivism risk, which, of course, is not supported by any of the information that was presented. Well, he had 17 felonies, right? I've got my defendant right here, right? 17 felonies at age 33? That's right, but even the commission tells us that the number of felonies does not necessarily indicate that he has a greater risk of committing particular crimes in the future, not greater than what criminal history category 6 already accounts for. The commission stops at, I think, 13 points. Even in its statistical analyses, it doesn't tell us anything about anything over 15 points, which strongly suggests that that doesn't actually, someone with more than 15 points, just by numbers alone, doesn't tell us that the person is going to be more likely to recidivate. And, in fact, the departure provision for underrepresented criminal history category, when it tells judges that they might want to depart, it doesn't talk about risk of recidivism. It talks about the seriousness of the prior offending. Those are departures, not variances. That is true, but that is exactly right. But it tells us what this information actually means, which is more criminal history points do not necessarily tell us a longer sentence is required. If it did, the commission would surely give us a criminal history category 7. I guess I had an opinion a few years ago where we tried to extrapolate all the way to 9 or 10, but after Booker, we got variances, and isn't the whole point of variances that you're not as tied to the specific kinds of ideas that are in departures? That's exactly right. And a lot of times, people like it when the judges vary downward, kind of based on bagasse and bagasse, and sometimes they vary upward. I say I'm categorizing it, but on kind of bagasse and bagasse. This guy, if he committed crime 17 after he had only 16, there's a chance that he'll commit 18 after he's had 17. So the answer to that question, of course, is yes, we are not bound by the departure provisions in the guidelines, and that after Booker, judges are, in fact, permitted to make decisions that are not bound by the guidelines, but they are bound by the statute, and the statute tells the court that it's to consider the four purposes of sentencing, and in this case, These are the 3553A factors you're referring to. Exactly, and so in this case, the particular purpose of sentencing that the district court was concerned with was the risk of recidivism, and the risk of recidivism, the judge is still required to consider that factor based on what we know, and what we know is that someone with 22 criminal history points is not more likely to recidivate than someone with 17 criminal history points or 16 criminal history points, and once we get to criminal history category six, we've accounted for that person's risk of recidivism, and in this case, the risk is not even of the kinds of offenses that we would consider to be so serious that the commission would say, okay, judges, think about the seriousness of the offense, which is tied to the defendant's culpability and the need for just punishment. How about, though, the fact that he commits 17 by age 33? It might be one thing if he's 50 and he's hit category six, but he's committing crimes basically as soon as he's released. It's a remarkable rate of felony convictions for someone that age. The guidelines don't account for that, do they? The guidelines do not account for that, but there's a reason for that. The reason they don't account for that is because the fact that he has that many criminal history points by age 33 does not predict that he's more likely than the 80 percent that he's already likely to recidivate. It doesn't change his likeliness. I mean, I don't follow that. Why and what's the authority for that? Well, if you look at 4A1.3, well, the authority is, first of all, all of the sentencing commission studies tell us that criminal history category, and in particular the points, correlate with risk of recidivism. They stop counting after 15. How many did he have? 22. So, I mean, he's well above the cap, again at age 33. He is, but his prior offenses are not what the commission would consider the kind of serious offenses that would warrant an upward sentence above the range. That's different than the simple risk of recidivism. Exactly. That's more about the serious. And the court, I think you're correct, the court was focused on the risk of recidivism, it seems. It was. And it seems like Judge Collier, who's done this many times, did take into account sort of the rate of convictions. I mean, he thought it was pretty amazing that Mr. Mooningham had 17 felonies by age 33, and that was something not reflected in the guideline range. I mean, why can't a district court think about that? I would say that the district court can think about that, but it should be cabined by the purpose that it's stating it's concerned about. And if it's about recidivism, then the fact that he has that many criminal history points does not predict any more likelihood of recidivism than 13 points or 20 points. That's where I just don't understand. Well, that actually is what the studies say, which is why this kind of conversation probably shouldn't take place without those studies being presented to the court. I think that the fact that the district judge Collier in his written memorandum sort of set aside a little bit that discussion and said it wasn't really what I was thinking about, not in terms of studies or what the commission did. I'm just looking at Mr. Mooningham. But at that point, it then compounded the error by pointing to two facts that are not themselves supported by the record. The first one is it said there were many thefts. Mr. Mooningham committed many thefts, and those thefts, many of which were committed with possession of a firearm. The court did not actually refer to anything in the PSR that supported that. And, in fact, there is nothing in the PSR to suggest that these thefts were committed with the possession of a firearm. In fact, at sentencing, several times the court and the parties agreed that there was no violence at all in his history. As I understand it, and correct me if I'm wrong, at best from the judge's point of view, there's one of them where when he is arrested a month later, he has a gun. That's the most I could find in the PSR. But the judge himself did not actually point to that. He didn't point to any one, he just said generically. And he said many of them. Well, he said more than one. Well, okay, I'm sorry. More than one. It's true. If zero is the right answer, more than one is the wrong answer. Exactly. Right there we have now injected into this substantive basis of the opinion, excuse me, of the sentence, is a fact that does not have support in the record. Judge Collier also went on to say that Mr. Mooningham has shown a repeated willingness to endanger the public by recklessly evading police. But, yes, it's true, 13, 14 years earlier when he was in his 20s, he did actually leave the scene by recklessly driving a vehicle. But here we have a situation where, in this very case, he stopped, he got out, he did not endanger the public by running away with his vehicle. He did it a different way. He did attempt to evade arrest, but on foot. That's right. I think he did one other time. I think, isn't he, the time when he had the gun, he had fled on foot also. Well, I don't think that I agree that he had a gun at that time. Well, it was dismissed, but the charge was that he had a gun, and then it was dismissed. That was actually later, though, when he was found. Yes, that's what I started out with. It was a month later. Okay. And I think I've probably covered everything here, but I just want to sort of recap that the substantive basis of the sentence was already based on some mistaken views of the commission's studies and recidivism that happened at sentencing, and then that particular error was then compounded by the written opinion, which itself had factual errors. And for both of these reasons, standing alone, the sentence was both procedurally and substantively unreasonable. I see I've run out of time, so I'll hopefully talk about the other issues. I mean, I don't want to be the first red light violator, but just real quick on something you just said. When you talk about the studies, the commission studies, are you talking about Judge Collier's reference on page 40, if you happen to remember, on the transcript where he talks about, I think it's pretty much a given that burglars have a higher tendency to recidivate. It's been some time since I've looked at this, but at one point there were some studies showing that burglars are the most likely to recidivate. Is that what you're referring to when you talk about studies? Actually, that study is not a commission study. It is unknown what study. So you were just referring to some other thing that the judge said? No, I'm referring to the actual study by the Sentencing Commission of burglars. I'm just trying to understand your argument. You said he had some improper consideration of studies. Is that right? Right. Is this what you're referring to? No, that's separate. That was an unnamed study that we don't know what it meant. The government's, I don't know if this is, since you're right, he didn't advert to it, but the government cites a study at page 15 by someone named Adwar with percentages of property offenders and violent offenders. So that study is actually, that article is really referring to a study by the Bureau of Justice Statistics that does, in fact, look at state burglar offenders and it concludes that they have a recidivism risk somewhere around, I think I might have said, 80-something percent. But that's not different from the risk of recidivism that Mr. Mooningham already has in criminal history category 6. The study that I'm referring to is the commission study of federal offenders who have been previously convicted of burglary. At the sentencing hearing, there was some discussion about what that study actually said, and trial counsel for Mr. Mooningham was able to say, I think that the commission also deleted burglary because burglars rarely commit burglary when they get out. Federal burglary, people who have prior, federal offenders with prior burglar convictions only commit burglary when they get out at 5%. So that is what was incorrect about the judge's views about the risk of recidivism. Do you have any other questions? Okay. Thank you. You'll have your rebuttal. We'll hear from the government. Good afternoon. I'm Tara Bay. I'm with the U.S. Attorney's Office in Chattanooga. And as this panel has already discussed, we have a 33-year-old man with 33 prior convictions, 17 of those felonies, over the course of 14 years leading up to his arrest for the present offense. And there are a lot of talk about numbers of convictions and how significant the numbers are. But the district court made it very clear that it wasn't just the number of convictions but also the frequency of those convictions. Mr. Mooningham had his parole or probation revoked four different times in that 14-year span, in 2006, 2008, 2013, and 2016. And the fact that he was in custody or on probation for nearly all of the 14 years leading up to his arrest for the present offense were also very concerning to the district court judge at the time of sentencing. And it was for those reasons that he sentenced the defendant to 87 months, which was above the guideline range but certainly within the statutory range. When he discussed the concerning nature of the crimes and indicate possession of a weapon, or maybe that was at the order, I thought I remembered that there was a discussion of his dangerousness. Is that not correct? Didn't the district judge speak of that? The district court did in his order after the motion for reconsideration. He did, as was previously discussed, mention that more than one of the occasions the defendant did have a firearm. And in paragraphs 27 and 31, 27 is where it's mentioned the defendant was arrested. And this is paragraphs of the PSR. It was where he was at 47 or 27? 27 was where it was mentioned that he was arrested and charged with being a felon in possession of a firearm, but that charge was later dismissed. And then 31 was one of the resisting arrest or fleeing offenses where he was also charged with resisting arrest with a weapon, involving a weapon. Your opposing counsel said a little bit about violence. Am I remembering this correctly? This is the guy who did things like jumped over the counter in a 7-Eleven and stole lottery tickets? Yes, that's Mr. Mooningham, yes. And I'm struggling with where violence fits in with that, if that was some of the basis of the court's decision. When you read through, I mean, it is undisputably a ridiculous number of crimes, but the type of crime is also remarkable for its lack of an appropriate criminal goal if you're trying to steal a lot of stuff that's worth a lot of money. I'm just struggling with a very odd record here, and I don't dispute that there are a whole lot of offenses going on, but you don't claim that this is a perpetually violent defendant, do you? No, no. That wasn't part of what the court said, was it? I would not say that Mr. Mooningham is a perpetually violent person. And during the sentencing hearing, during the back and forth between Judge Collier and Mr. Mooningham's counsel, she argued several times that, look, he has a lot of criminal history, but it's not violent. And Judge Collier said a few times, I'm not suggesting that he is violent. I'm saying that he is a danger to the community because of the continuous nature of his crimes. And when he's resisting arrest, when he's driving recklessly, he is putting the community at danger. That was what related to the driving recklessly. Yes. Well, help me understand why it's not procedurally unreasonable for the court to give one reason when he orally announces a sentence and then a different reason when he or she enters a written order subsequently. So I don't believe that that's what happened in this case. At the sentencing hearing, Judge- You would then concede that that would be inappropriate, wouldn't it? Well, I guess I would depend on what the two reasonings were, what the two justifications were, and how separate they were. But in this case, Judge Collier said at the sentencing hearing, what I find most concerning was the frequency, number, and nature of the defendant's convictions. And in his order, the district court said it's not just the number of his convictions, but that they were steadily over a number of years since the time the defendant was 20 years old. The thefts, the aggravated burglaries, one or more involving firearms and the danger to the public- Well, there's a question here about whether the one or more regarding firearms is even accurate. But what I'm concerned about is 3553, I mean, make sure I'm right to see, requires that the judge look the defendant in the eye and give his explanation for why he is giving that sentence. And if that is the requirement, which I think procedural reasonableness says it is, then how can a judge later say, oh, I see that you're objecting to my analysis of recidivism, maybe I was wrong, well, I really wasn't looking at general recidivism, I was looking at his recidivism, and besides, he is violent and has possessed weapons. How can we review that kind of moving rationale? But how can that ever satisfy 3553's requirement that the defendant stand before a judge and be told the basis of the sentence that was given? Well, I think that what the district court was saying in his order was, even if I was wrong about the prior burglary studies, even if I had that, and in the sentencing transcript, the judge says, I believe there's some older studies, I don't recall exactly when they were or what they said, but I think in the order where the judge is saying, look, even if I was mistaken on whether those studies apply to the defendant or not, I am basing my sentence, I base my sentence on his recidivism, and that's pretty much what this court has said in Adams was harmless error. Sorry, what's the name of the case? It's Adams. It was cited in at least one of the briefs, but I have a citation. Adams? Adams, like the second president. Adams. Yeah. Okay. How can it be harmless error not to comply with the edict or the rule of 3553 and the constitutional rights of a defendant to be told the reason for his or her sentence by the judge? I mean, we know if you have a written order and you have a verbal pronouncement of sentence, it's the verbal pronouncement of sentence that controls. Yes. So how can a judge come back in later, change a reasoning, write it in a written order at variance with what she said from the bench, and satisfy procedural reasonableness? Well, I would say that if it would not be procedurally reasonable, if the judge in a subsequent order mentioned something that was entirely different from what was said at the sentencing colloquy. But at the sentencing colloquy, the judge was very specific, was very certain that he was very much concerned about this defendant's criminal history and the rate and the frequency and the number and the kind of criminal history. And what he said in his order is the same thing. The judge said it in a different way. I'm struggling with that, Counselor, because he said, I've looked at these studies, I know burglary is a recidivistic crime greater than other crimes, and I'm worried about you recidivating because you have all the time. And then he enters a written order that says, I really wasn't worried about these studies, I was wrong, you were right, but I was worried about the number of crimes and I was worried about his dangerousness in weapon possession, but we know that the record doesn't support that. So how is that not different reasons, and what does a review panel of judges look to? Does a judge just get to say, whoops, ignore that, or as we would say if we were trying something, strike that, I'm going to give another reason. I'm struggling with how we do that, but I'm also struggling with how you can constitutionally do that. I really do believe that in the present case, it was not a different reason so much as it was maybe a more thoroughly explained reason, because I did argue at the sentencing that the defendant was also a danger to the community because of his resisting arrest, because of his evading arrest, and I think he had nine convictions for those types of offenses. But if the judge doesn't pick up on your argument and use it as a basis, then it's not a basis for the sentence that was articulated from the bench, is it? Well, I don't think that the judge necessarily, let me say this, the judge explained the basis for his ruling, and he mentioned the 3553A factors, and specifically those regarding deterrence and protection of the public. The judge may not have said, I also find that you are a danger, but because the argument was made, we can assume that the court considered that. Well, if a defendant makes a different argument or a new argument in a motion to reconsider, the defendant is going to get a new response that might not have been discussed at the hearing. You were at the hearing. I mean, would you argue that the motion to reconsider, to some extent, had arguments that hadn't been made before, or made the same way before that prompted some kind of different response? I don't know that I would necessarily say that. I think that the defense counsel did a very good job of pointing out, as Judge Strand says, that there's a whole lot of convictions here, but most of them were pretty juvenile. I mean, he had a handgun when he jumped up on the counter for the lottery tickets. Yes. That could have gone south real fast. Yes, it absolutely could have. No breaking into houses. I mean, really playing roulette in our part of the country. Is that right, that he had it when he jumped the counter? That's your paragraph 27, and as I read it, he was charged with unlawful possession, but that was when he was arrested. I didn't read that as that he – I mean, it's conceivably ambiguous, but I read it that he had the handgun when he was arrested a month later. Is there anything that helps us either way on that? I don't believe that there is. I mean, because it is right. It was a month after the stealing that he was arrested. Yes. The PSR then doesn't make clear that he did have the handgun when he jumped on the counter. Paragraph 31 says – it just refers to a weapon. Yes. Resistance. So we don't know if that's a firearm. That's correct. What if the judge – I mean, what if the court's mistaken in its reconsideration order when it says more than one of these involved a firearm? If the judge is mistaken, if the court finds that that is a mistake, a fact that influenced the judge's decision. I mean, it does seem to be mistaken based on the PSR. Well, yes. I mean, I guess one versus more than one would be – there is – We don't know if he had the one during the crime, right? Right. But we do know that he had the firearm in the past. I don't know that that – I'm not sure when he had the firearm. Go ahead. Continue. But if I could take you back to 31. It took me a while to figure this out. But here he had – he got, like, these 14 charges, but these were in Lincoln County Circuit Court. Yes. And then the part about the resisting arrest involving a weapon is kind of thrown in at the bottom, and that's in Lincoln County General Sessions Court. Is that a lower-level court as opposed to the circuit court? So I'm not licensed in Tennessee, but I have been in Chattanooga for 15 years. We call General Sessions the pit. Okay. But in any event, whatever they did do – I believe not a court of record. Whatever they did do, there's simply no final disposition. So at most we know that there was something called resisting arrest involving a weapon, but we don't know what became of it. Is that fair? That is fair to say. But you would have known if it had gone to circuit court because that's a court of record. So it did not. Certainly we would have known if there had been a conviction, and that would have been in the PSR. The origin, certainly. So that's correct. And it is clear, I think, in the PSR that that charge, however it was, was dismissed prior to our sentencing date. So the district court was aware of those facts when – Did the court have an obligation to notify the defendant before the sentencing hearing that it would be referring to the commission report about burglary, recidivism? No. After Booker, the court has to determine what the guidelines range is, and then look at the 3553A factors and can sentence the defendant anywhere from zero to two years. I know the court has that determination about the sentence, but what about – I want to talk about this commission report because I have some views about how it factors in here. I don't think that that – let me say this. I think it was the Adams court. I think it was the Adams decision where the AUSA had said, the defendant needs an 18-month sentence because it takes that long for his brain to reset. In that case, they're talking about a scientific fact, really, that I think the district court relied on in error. In this case, if the judge had said, look, I've just read the most recent iteration of recidivism studies done by the Bureau of Prisons, and because I find that he fits into this category, I am going to upwardly vary. I think in that situation, there would be concern that the defendant was caught unawares. But when the judge, as the court has noticed, the judge has been on the bench for more than 20 years. He's got that institutional – sorry, I forgot my word. Institutional knowledge. Yes, institutional knowledge. I don't think the court is tied to a particular study. He considers the defendant in all of his history and all of his characteristics, and he takes that institutional knowledge, and he does his best to make a decision that he thinks is appropriate on the facts. Isn't there often a procedure by which a judge lets you know that that's a consideration? Sometimes. That's not unusual, is it? It's not unusual. It's certainly not – Because there's this danger, because you want – it's the same reason we give you a notice to come prepared to an oral argument to answer a question on this case. Yes. Because we want an effective resolution. Right, right. And when he raised the question of whether there should be an increase over the guideline sentence, the government did not ask for an increase. Isn't that correct? That's correct. I did not ask. I asked for a top-of-the-guideline sentence. But my – the judge very rarely is bound by my request. The question before the court is whether the district court sentence was reasonable and not whether it went along with what I thought would be appropriate in the case. All righty. Thank you. Thank you very much. We'll hear from Ms. Coffin. Let me ask you about your views about this reconsideration procedure, because if you take the strict view that's been put in some of the questions, wouldn't a judge kind of be in danger of saying anything on a reconsideration other than denied? I mean, we see this all the time in employment cases. I fire you because you're a bad person, and then you come back and I say, well, you're also an ugly person. Here, what should a judge do when confronted with a reconsideration motion other than say you lose? Doesn't he get in trouble otherwise, just like this judge may have? I recognize that this question is implicated by the circumstances of this case, like what actually can happen in a Rule 35 proceeding. It's obviously very limited. The answer is no, the judge does not always have to just say you lose. What's happening is it's giving the judge the opportunity to correct the sentence if it was based on incorrect information, which is what happened here. Assuming he doesn't want to do that, can he say anything other than you lose? Assuming the judge feels that there was nothing wrong and there was nothing to be said, the judge can say you lose, and we're in the same position that we would be if we were simply appealing the sentence as stated in open court. In this particular case, the motion to reconsider did ask the court to correct the sentence, and in denying that request, it actually made another error. I know I don't have a whole lot of time, and I don't want to talk about something that Ms. Bay doesn't really have an opportunity to respond to under the circumstances here, but I would like to mention just for a moment the second issue that I raised in the briefs, which is the four-level enhancement for being a felon in possession of a firearm in connection with another felony offense. I fully recognize that the standard is not high to show that the defendant possessed a firearm in connection with drug trafficking when there is evidence of drug trafficking. The situation has changed somewhat when there's only evidence of possession, and I just want to highlight here that there's nothing about this case that suggests that Mr. Mooneyham or the passengers in his car ever had anything to do with drug trafficking. In that way, this case is different from the cases that the government cites, different from many if not almost all of the cases that have come out from this court, and although the quantity of drugs is higher than in McKenzie, I would say that this case is more like McKenzie because of the particular circumstances here. Unless the court has any questions about that. Okay, just a quick factual. It looks to me like defense counsel is the first one to refer to the sentencing commission study about burglary recidivism, and she references it in connection with why they took burglary off the violent felony list. That is correct. So, I mean, that's not the district judge's fault. She was responding to the district court's expression of concern about burglars and recidivism in particular. Well, he wasn't talking about studies. He just pointed out that Mr. Mooneyham has four burglaries, and he was worried about that, which is completely fair to say in a sentencing hearing. Well, in fact, Judge Kethledge, on page 217, he mentions a study. On 217, page ID number 217, he has talked about burglaries now already three, four times. That's three pages after counsel refers to, hey, the sentencing commission removed this because they found that burglaries, whatever, burglary shouldn't be a crime of violence. I mean, I'll go back. I mean, we'll go back and look, but it seems certainly possible that counsel is the one who starts this dialogue about the commission's thoughts about burglaries, and then, you know, they go from there. So you may be correct, but according to my notes here, and I have the transcript in there, I can look, but he mentions the study first, and then she says, I don't know this study, and then she says the commission. That's on page 40 and 41 of the transcript. I'm looking at 37. Is it the distinction between the initial discussion of violence and the later discussion of recidivism? Exactly. So what happened was as soon as the judge started talking about his concerns about the burglary, obviously any defense attorney who knows about burglary and anything to do with 3553A is going to say, oh, but these burglaries were not violent, and we don't have to worry about them, and that's what started the conversation. So I'm not sure that it's really – Yeah, it's just, you know, it's hard to sort of circumscribe, you know, a free-flowing dialogue that, okay, it's okay to talk about this, but, you know, I mean, obviously they have to be able to talk to each other, but, oh, if you refer to some study somewhere, now, you know, stop everything, it's going to be vacated. I mean, that is a concern. Well, you may be right about the order of this, but her invocation of the study was in response to what the judge had said, so it was a normal response. I think it was an organic conversation. But anyway, thank you very much, both of you, for your arguments. The case will be submitted.